## Hughes-Hallett, Appellant, *v.* Hughes-Hallett.

[Marked to be reported.]

*Ante-nuptial contract—Separate use and spendthrift trust.*

Plaintiff and defendant prior to their marriage entered into an agreement which provided "that if during the said intended coverture, Miss Schaumburg shall separate herself and live separate from Col. Hughes-Hallett, without reasonable cause, then and during such period of any and every such separation as may occur after Miss Schaumburg shall have derived from her aunt, Emily Page, as accession of property yielding her an income of not less than 1,000 pounds a year, the said trustee or trustees for the time being of these present, shall pay to Col. Hughes-Hallett one-third part of the income of the said presently acquired property." The expression "presently acquired property," was defined as being "all the real and personal property whatsoever, whether in possession, reversion, remainder or expectancy, which immediately before the solemnization of the said intended marriage, Miss Schaumburg shall be seized or possessed of, or entitled to, or empowered by deed absolutely to dispose of." Several years after the date of the agreement the aunt referred to in it died, leaving property in trust for the sole and separate use of defendant. It also appeared that prior to the date of the agreement other relatives had left property to defendant for her "sole and separate use and benefit, and not liable to execution, attachment or sequestration for any debts or liabilities whatsoever." *Held*, that no portion of the property included in these trusts came within the description of "presently acquired property," as set forth in the marriage settlement. Besides, they were valid and subsisting trusts for sole and separate use, and therefore beyond the control of the parties to the ante-nuptial contract.

Argued Jan. 26, 1893.    Appeal, No. 89, Jan. T., 1893, by plaintiff, Francis Charles Hughes-Hallett, and the Union Trust Co., trustee in the ante-nuptial contract, from decree of C. P.

No. 4, Phila. Co., Dec. T., 1890, No. 315, sustaining demurrer to a bill in equity.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Bill in equity to compel payment of portions of income provided in ante-nuptial agreement.

The facts appear by the opinion of the Supreme Court.

The Fidelity Insurance, Trust & Safe Deposit Co., trustees under the will of James Page and George Page and the Fidelity Insurance, Trust & Safe Deposit Co., and John Cadwalader, trustees under the will of Emily Page, and Emilie Page Hughes-Hallett, filed separate demurrers to the bill.   The court sustained the demurrers and dismissed the bill.

*Error assigned* was decree dismissing bill.

*E. Hunn, Jr.*, and *W. W. Ledyard*, for appellant.—Under the will of George W. Page and James Page no valid separate use trust was created, because defendant was not then married nor in contemplation of marriage : Quin's Est., 144 Pa. 444.

The deed of marriage settlement was made and executed by and among parties sui juris, the two principals being in contemplation of marriage with each other; this fact furnishing a good consideration and one recognized by the law of this state ; and as the agreement was not against public policy nor in contravention of public morals, and there is no adequate method provided by law for its enforcement, equity will relieve.   Jurisdiction in equity depends not so much on the want of a common law remedy as upon its inadequacy : Bierbower's Ap., 107 Pa. 14 ; Earley's Ap., 121 Pa. 496 ; Bispham, Eq. § 484 ; Brush Electric Co., 114 Pa. 574.

There is between Mrs. Hughes-Hallett and the other defendants the privity which the law recognizes of an implied contract that the defendants shall deliver to her, on demand, the property to which she is " entitled," and the privity of an express contract between her and her husband ; and the deed operates in law as a transfer to her husband of her right of demand and right of action against the defendants to the extent of the one third of the presently acquired property as expressed in the deed.

*George Wharton Pepper* and *John G. Johnson*, for Mrs. Hughes-Hallett.—The disposition in Miss Schaumburg's favor,

under the wills of George W. Page and James Page, are in the form of spendthrift trusts—for her "sole and separate use and benefit; and not liable to execution, attachment or sequestration for any debts or liabilities whatsoever." Therefore the property is not subject to her disposition, nor can she, as required by the bill, compel the conveyance of the property from its custodians to appellants.

The property disposed of by the will of Emily Page in favor of Mrs. Hughes-Hallett is not " presently acquired property," within the meaning of the marriage settlement, since Miss Page did not die until several years after the marriage. And, moreover, the said property is left to the trustees named in the will for the sole and separate use of Mrs. Hughes-Hallett, under a valid and subsisting trust for coverture.

*Robert H. Neilson, Henry C. Olmsted* with him, for Fidelity Insurance, Trust & Safe Deposit Co., trustees under wills of George W. and James Page, appellees.—These wills created spendthrift trusts: Fisher v. Taylor, 2 Rawle, 33: Keyser v. Mitchell, 67 Pa. 473; Overman's Ap., 88 Pa. 276; Ashurst v. Given, 5 W. & S. 323. A spendthrift trust may be created as well for a woman as a man: Ashurst's Ap., 77 Pa. 464.

*George Wharton Pepper*, for John Cadwalader and The Fidelity Insurance, Trust & Safe Deposit Co., trustees under the will of Emily Page, appellees.

OPINION BY MR. CHIEF JUSTICE PAXSON, February 6, 1893:

The day before the marriage of Lieutenant Col. Francis Charles Hughes-Hallett, of St. Albans Place, in the county of Middlesex, England, to Miss Emilie Page Schaumburg, of the city of Philadelphia, but at that time residing at Paris, France, the parties to said contemplated marriage executed a certain indenture of marriage settlement providing, inter alia, that in case Mrs. Hughes-Hallett shall at any time separate herself and live separate from her husband, without reasonable cause, then a certain proportion of the property of which she was possessed at the time of her marriage shall become payable to her husband.

This is an unusual provision in an ante-nuptial contract. Our duty is to pass upon its legal effect.

This bill was filed in the court below by the appellant against his wife and her trustees for the purpose of enforcing this par-

ticular clause in the marriage settlement. It avers as the ground of equitable relief that the said Emilie did on the 1st day of August, 1890, separate herself from her husband without reasonable cause. To this bill the defendant demurred, which demurrer was sustained by the learned court below and the plaintiff's bill dismissed with costs.

The clause in the marriage settlement is thus stated in the appellant's bill: "That if, during the said intended coverture, Miss Schaumburg shall separate herself and live separate from Col. Hughes-Hallett, without reasonable cause, then and during such period of any and every such separation as may occur after Miss Schaumburg shall have derived from her aunt, Emily Page, an accession of property yielding her an income of not less than £1,000 a year, the said trustees or trustee for the time being of these presents, shall pay to Col. Hughes-Hallett one third part of the income of the said presently acquired property, and during the other or remaining period of any such separation, shall pay to him one fourth part of the income of the said presently acquired property."

The said "presently acquired property" is thus carefully defined in the marriage contract referred to :

"All the real and personal property whatsoever, whether in possession, reversion, remainder or expectancy, which immediately before the solemnization of the intended marriage, Miss Schaumburg shall be seized or possessed of, or entitled to, or empowered by deed absolutely to dispose of, excepting jewels, trinkets, ornaments, wearing apparel, furniture, plate, pictures, prints and books, and other articles of the like nature, which it is hereby declared shall belong to Miss Schaumburg for her separate use, and excepting money in her personal possession or at her bankers in England or Paris (all which real and personal property, except as aforesaid, is hereinafter referred to as the said presently acquired property)."

The bill prayed a payment of property held by the Fidelity Insurance, Trust & Safe Deposit Co., as trustee for Mrs. Hughes-Hallett, under the wills of George W. Page and James Page ; and also property held by John Cadwalader and the said Fidelity Company, as trustee for Mrs. Hughes-Hallett under the will of her aunt, Emily Page.

There appears to be two kinds of property, one called "pres-

ently acquired property," which consisted of property which she owned at the date of her marriage, and " after acquired property," which referred to such property as Miss Schaumburg might thereafter become possessed of.

It is clear that under this deed the appellant could never be entitled to anything but "presently acquired property."

The claim of the appellant that the accession of property which Mrs. Hughes-Hallett received under the will of her aunt, Emily Page, who died several years after the execution of the marriage settlement, was " presently acquired property " within the terms of said settlement, does not require discussion. It also appears from the will of Emily Page that John Cadwalader and The Fidelity Insurance, Trust & Safe Deposit Co. are the trustees for Mrs. Hughes-Hallett of a valid and subsisting trust for her sole and separate use, and that they hold no property whatever for Mrs. Hughes-Hallett which is not clothed with that trust. This appellant is a stranger to that trust, and there is no privity between the trustees and himself. In no event, as we view the case, could the prayer of the appellant's bill be granted as to these trustees.

The wills of George W. and James Page respectively contain a valid spendthrift trust not differing essentially in phraseology. In each it is provided that the income directed to be paid to the sisters, niece and nephew of the testator, is to be for their sole and separate use and benefit and not liable to execution, attachment or sequestration for any debts or liabilities whatsoever. A spendthrift trust may be created as well for a woman as for man : Ashurst's Ap., 77 Pa. 464.

We are of opinion that no portion of the property included in the foregoing trusts comes within the description of " presently acquired property " as set forth in the marriage settlement. It follows that the appellant has no claim, either upon the corpus of the said trust estates or their product. Moreover, the trusts being lawful by the law of Pennsylvania, the property included in them is beyond the control of Mrs. Hughes-Hallett herself, excepting as is provided therein.

Judgment was properly entered by the learned court below in favor of the defendants upon the demurrer.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.